# ORIGINAL

# In the United States Court of Federal Claims

No. 15-1060C
(Filed: May 31, 2016)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
GENE S. RANA,                                   *
                                                *
              Plaintiff,                        *
                                                *
       v.                                       *
                                                *
THE UNITED STATES,                              *
                                                *
              Defendant.                        *
                                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

FILED

MAY 31 2016

U.S. COURT OF
FEDERAL CLAIMS

---

## ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

This military pay case comes before the Court on Defendant's motion to dismiss the complaint. For the reasons stated below, Defendant's motion to dismiss is granted.

### Background

Plaintiff pro se Gene Rana enlisted in the Army on November 4, 1990, and was discharged as a sergeant in order to accept a commission on September 27, 1993. A60.[1] He was promoted to first lieutenant on September 27, 1995, but was released from active duty and transferred to the Army Reserve on February 10, 1998, for "non-selection for permanent promotion." A17, 60. On March 18, 2001, Plaintiff was ordered to active duty as part of the Active Guard Reserve ("AGR") with the 323rd Military Intelligence Battalion, 99th Reserve Support Command for a three-year term, and promoted to captain on March 20, 2001. A17, 60.

Plaintiff received two adverse Officer Evaluation Reports ("OERs") during the first year and a half of his three-year term in the AGR - - one for the period of March 3, 2001 through October 28, 2001, and one for the period of May 10, 2002 through October 29, 2002. A60-61. In both reports, Plaintiff was given an unsatisfactory performance rating and a recommendation that he not be promoted or retained. Id. On September 6, 2002, Plaintiff filed a complaint with the Department of the Army Inspector General "alleging reprisal against him for submitting a

---

[1]   A_ refers to the Appendix attached to Defendant's Motion to Dismiss.

request for a commander's inquiry on 22 February 2002 . . . ." A39. On October 17, 2002, Plaintiff's battalion commander suspended Plaintiff's security clearance due to "[u]nsatisfacory performance," and ordered an emergency mental health evaluation and a "full fit-for-duty physical examination." A18, 39, 51. Further, possible revocation of Plaintiff's clearance was to be deferred "until the mental and physical examinations established whether there was cause beyond [Plaintiff's] control that was responsible for his unstable behavior." A18. Plaintiff's security clearance was downgraded on November 12, 2002, from TS-SCI to classified data only. A19. Plaintiff did not appeal the downgrade, and his clearance was not reinstated. Id. Plaintiff subsequently alleged that the mental health evaluation was ordered in retaliation for his communications with the Inspector General. A18. A later investigation determined that there were no acts of reprisal against Plaintiff, but that Plaintiff's commander had not followed proper procedures in ordering the emergency mental health evaluation. A42, 51.

On October 29, 2002, Plaintiff was detailed to the 5115th Garrison Support Unit for "rehabilitative purposes." A39. This detail lasted 179 days, from October 30, 2002, until April 27, 2003. Id. On December 12, 2002, Plaintiff's former commander initiated a flag - - a nonwaivable disqualification, which precludes an officer's subsequent duty in the AGR program - - against Plaintiff for "multiple periods of being [absent without leave] and his illegal extension of a 'sick in quarters' period." A19, 74, 76. On February 8, 2003, Plaintiff received a second flag due to a "pending elimination action." A19.

Plaintiff appealed the two negative OERs to the U.S. Army Reserve Personnel Command on March 17, 2003, but his appeals were denied. A40. Plaintiff also filed an application with the Army Board for Correction of Military Records ("ABCMR"), contesting the two negative OERs, but the ABCMR found that there was no error, as Plaintiff did not show that "the contested reports contain[ed] any serious administrative deficiencies or [were] not prepared in compliance with applicable regulations and policies." A60, 62. The ABCMR denied Plaintiff's application for correction of records on July 1, 2004. Plaintiff's request for reconsideration was denied on July 14, 2004. A57.

On May 13, 2003, Plaintiff was detailed a second time to the 5115th Garrison Support Unit, again for "rehabilitative purposes." A40. During this detail, which lasted until November 7, 2003, a Board of Inquiry ("BOI") was held from September 20-21, 2003. A19-20. The findings of this BOI were later vacated. A36.[2]

On March 1, 2004, Plaintiff was notified that he would be released from active duty "due to having a nonwaivable disqualification during his initial AGR tour." A41. Army regulations prohibit placing a flagged member on indefinite status in the Active Guard Reserve program. A20. At the time, Plaintiff was flagged for failing the Army Physical Fitness Test and for failing to maintain weight standards. A19. On that same day, Plaintiff received a general officer memorandum of reprimand, which "noted that [Plaintiff] was flagged because of the involuntary separation proceedings" and that his security clearance remained suspended. A41. Plaintiff was released from active duty on March 17, 2004, and was transferred to the Army Reserve Control Group (Reinforcement). Id. The reason for separation was "non-retention on active duty" pursuant to Army Regulation 600-8-24 (Officer Transfers and Discharges). A20. A second

---

[2] The record does not indicate why the BOI's findings were vacated.

BOI, mandated by the U.S. Army Human Resources Command – St. Louis, subsequently recommended that Plaintiff be involuntarily separated. A42. Plaintiff was given an Honorable Discharge from the Army Reserve on March 25, 2005. Id.

## Procedural History

After his discharge, Plaintiff filed another application with the ABCMR again contesting the two negative OERs, as well as seeking erasure of the two BOIs from his records and review of what Plaintiff characterized as his whistleblower allegations. On March 20, 2007, the ABCMR upheld the two OERs, finding "no evidence to show the rating officials' evaluation of [Plaintiff's] performance . . . was not the considered opinion and objective judgment of those rating officials at the time of preparation." A46. The Board agreed with the conclusions of the earlier investigations by the Inspectors General of Plaintiff's unit, the Department of the Army, and the Department of Defense that Plaintiff's allegation of reprisal "in violation of the Whistleblower Act was not substantiated . . . ." A47. The ABCMR granted Plaintiff partial relief, in the form of adding four memoranda from his time with the Garrison Support Unit to the performance section of his personnel file, but did not award Plaintiff any further relief. A49.

On January 8, 2009, Plaintiff requested reconsideration of the ABCMR's decision, but his request was denied for being outside of the one-year time limit for review, and for failing to present any new evidence for the Board's review. A29. Plaintiff filed a new application with the ABCMR, again seeking correction of his military records regarding the flags initiated against him as well as the general officer memorandum of reprimand. Although Plaintiff was outside of the three-year time limit for filing his application, the ABCMR elected to review the merits of his case. On July 28, 2009, the ABCMR denied Plaintiff's application, finding no error in the issuance of either the flags or the general officer memorandum of reprimand. A26-28. Plaintiff filed two requests for reconsideration of this decision, but both were denied. A10-11. Plaintiff attempted to pursue other relief to no avail, and filed a fourth application with the ABCMR, which was ultimately denied. A1-9.

Plaintiff filed his complaint in this Court on September 22, 2015, alleging wrongful discharge as a result of reprisal for his action as a military whistleblower. Compl. ¶¶ 2, 6. Plaintiff requests restoration to active duty, back pay, retirement after being promoted to Colonel, correction of his military records, including removal of "false official statements and other harmful submissions," and $10,000,000 in compensation for loss of livelihood, harm to his character, cruel and unusual punishment, pain and suffering, and obstruction of justice. Id. at 1-2, 12-13.

## Discussion

Plaintiff must first establish subject-matter jurisdiction before the Court may proceed to the merits of the action. Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004). The Court must dismiss the action if subject-matter jurisdiction is found to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to the Plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

The filings of pro se litigants are held to "'less stringent standards than formal pleadings drafted by lawyers.'" Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs still bear the burden of establishing the Court's jurisdiction, and must do so by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2012), provides that this Court

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act does not create a substantive right for money damages against the United States, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). A plaintiff must show that he or she is entitled to money damages from an additional source of substantive law. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). The substantive right to money damages must extend from the Constitutional provision, statute, or regulation giving rise to the claim. See United States v. Mitchell, 463 U.S. 206, 216-17 (1983) ("[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" (quoting Testan, 424 U.S. at 400)).

The Court construes Plaintiff's request for back pay as a claim under the Military Pay Act, 37 U.S.C. § 204. Under the Military Pay Act, members of the military on either active duty or participating in a full-time training exercise are entitled to the basic pay associated with their assigned pay grade. 37 U.S.C. § 204(a)(1)-(2) (2013). This statute provides jurisdiction for this Court to hear claims brought by "military personnel claiming damages and ancillary relief for wrongful discharge." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Jurisdiction in this Court is proper in wrongful discharge suits because "[i]f the discharge was wrongful the statutory right to pay continues." Id.

A claim brought under the Tucker Act must be filed within six years of the claim's first accrual. 28 U.S.C. § 2501 (2012); see John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 136 (2008); Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003) ("If the plaintiff does not file suit within the six-year limitation period of 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge."). This is a jurisdictional requirement that cannot be waived, as it is a prerequisite for the waiver of sovereign immunity in suits against the United States for money damages. John R. Sand & Gravel Co., 552 U.S. at 134.

Claims for military pay accrue at the time of discharge. Martinez, 333 F.3d at 1303. Because Plaintiff's date of discharge occurred on March 17, 2004, as stated on Plaintiff's signed Form DD-214, Plaintiff was required to file suit in this Court by March 17, 2010. Plaintiff's claims for back pay and benefits, filed in this Court in 2015, eleven years after these claims accrued, are therefore time-barred.

Plaintiff contends that because his complaint was filed within six years of the final decision of the ABCMR in 2009, he filed within the statute of limitations period. Pl.'s Resp. 6. Plaintiff believes that the Army requires that "all avenues of redress" must be exhausted within the Army before he could approach "another Board, Commission or Court for relief." Id. However, it is well established that obtaining a final decision of a correction board is not a mandatory prerequisite for filing a discharge suit. Rather, correction boards are considered to be a "permissive administrative remedy," they are not a "mandatory prerequisite" to filing suit in this Court. Martinez, 333 F.3d at 1304. As the Federal Circuit has held, "the failure to seek relief from a correction board not only does not prevent the plaintiff from suing immediately, but also does not prevent the cause of action from accruing." Id. Therefore, Plaintiff's claims for back pay and benefits are time-barred.[3]

Plaintiff also seeks to invoke this Court's jurisdiction through the Military Whistleblower Protection Act, which prohibits reprisal against a member of the armed forces for communicating with an Inspector General. 10 U.S.C. § 1034(b)(A) (2013). However, "it is well established that this court lacks jurisdiction over Whistleblower Act claims." Volk v. United States, 111 Fed. Cl. 313, 326 (2013); see also Chisolm v. United States, 82 Fed. Cl. 185, 199 (2008), aff'd, 298 F. App'x 957 (Fed. Cir. 2008) ("[O]ur court has repeatedly held that we lack jurisdiction over such claims because the statute is not money-mandating."); Gant v. United States, 63 Fed. Cl. 311, 316 (2004), aff'd, 417 F.3d 1328 (Fed. Cir. 2005). The Military Whistleblower Protection Act provides an "administrative process for handling complaints of improper retaliatory personnel actions," not a jurisdictional basis for filing a claim in this Court. Soeken v. United States, 47 Fed. Cl. 430, 433 (2000), aff'd, 20 F. App'x 900 (Fed. Cir. 2001).

Plaintiff's claims for compensation based on his loss of livelihood, defamation of character, and pain and suffering sound in tort, and therefore lie outside of the jurisdiction of this Court. Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995).

## Conclusion

Defendant's motion to dismiss is **GRANTED**. The Clerk is directed to dismiss this action.

MARY ELLEN COSTER WILLIAMS
**Judge**

---

[3] Plaintiff also argues that this Court has jurisdiction over his claims because he "signed a contract with the Army on his initial entry [into] active duty" in 1990. Pl.'s Second Resp. 2. Even if Plaintiff's claim were not time-barred, it would still fail, as military pay claims are grounded in statute and regulation, not contract. See Bell v. United States, 366 U.S. 393, 401 (1961) ("[I]t is to be observed that common-law rules governing private contracts have no place in the area of military pay. A soldier's entitlement to pay is dependent on statutory right."); Sonnenfeld v. United States, 62 Fed. Cl. 336, 338 (2004) ("It is settled law . . . that Tucker Act jurisdiction for cases involving military pay must be based solely upon statute and regulation, not upon contracts of enlistment or other documents relating to enlistment.").